Garcia verses the Attorney General. Good morning, may it please the Court, William F. Penning on behalf of the Petitioner, Rezaldo Garcia. I would like to reserve four minutes for rebuttal. Section 246A of the Immigration and Nationality Act continues to impose a statute of limitations on the Department of Homeland Security, not only on its ability to initiate rescission proceedings, but on removal proceedings that are solely based on fraud and the granting of the adjustment of status to the alien. In fact, unless my colleagues object, the argument here is so clear from your perspective and I'm not in any way suggesting whether or not we agree with it, but you're basically arguing whether or not, you're arguing that the amendment that reads, nothing in this section, subsection, shall require the Attorney General to rescind the alien status prior to commencement, et cetera, whether or not that amendment undermines our holding in Bama Dilley, if I'm pronouncing that correct, in terms of the five-year statute of limitation that would otherwise apply to your client. Is that right? Okay. Maybe it's easier if we just hear what your opponent has to say and then let you respond to that because your argument is so crystal clear. You've got a case which arguably is on point, arguably not on point, but if it controls, the argument's over and you win. So the issue is whether or not the amendment impacts or undermines our holding in Bama Dilley, or whether or not the Ninth Circuit law now controls because of this amendment. So why don't I ask to hear from your opponent and maybe that'll sharpen the issue a little bit more. You mean start? Start with Apolli. Oh. You might call it Bass-Ackwards. I'm sorry, I just wanted to make sure that you had copies of my 28-year letter. Yeah. I hadn't read it. It was on the bench, but I did. It's a case that at least I was familiar with and I assume my colleagues were too, but I You mean Dama-Zuma, or however it's pronounced? Zuma? Right. That was an ultra-presidential opinion, was it not? It was. January 24th. We keep saying that non-presidential opinions are just that, non-presidential, and lawyers still insist on jumping up and down and making a lot out of them, but Judge Weiss is exactly right. It's a non-presidential opinion. That's my case. We could make it presidential. Judge Prente has heard of it. So no doubt this may be a choice of many. But we don't have to pay any attention to his book. That's right. We could make it presidential retroactively. He may have gotten something right. I mean, it's a broken clock twice a day. Well, let me start. If you may, I can take a call. My name is Ari Nasr. I'm from the Department of Justice. I am a representative of the Attorney General. And in this case, there arises some suspicion about fraudulent detention of the judge's office. And fraud was conceded, and she was placed in removal proceedings. And now she claims that the proceedings should be terminated because they weren't initiated in five years. Congress, however, has resolved this issue in 1996. And this court, Your Honor, has resolved this issue in due document when it's held that the statute does not extend the limitation period to removal proceedings. Now, it's not a presidential decision. But it has clear reasoning. It concerned the issue. It resolved the issue. That same reasoning should be applied. Mr. Nazaroff, could you explain to me why there is a five-year limitation period for rescission and why, under your argument, there is no period for removal actions? Absolutely. The five-year period protects the alien. For example, that period is important for, as examples such as I'm about to give you. Let's say you have an alien who came to the United States. Where are the words in the statute that were supposed to be construed there? Well, the statute starts off if at any time within five years after the status has been otherwise adjusted. Now, where does it say that the five years does not apply to either rescission or revocation? Well, Your Honor, if you look at the amendment, which starts nothing in the subsection. And what words in the amendment talk about five years? Well, the five-year, as this Court has said in de Gaussman, the five-year portion just applies to the rescission. Well, I thought it was sudden. De Gaussman, we just distinguished Bramadelli, however it's pronounced, because in Bramadelli, the Attorney General knew about the grounds to remove a deport within the five-year period and didn't act. In de Gaussman, the AG did not know that, so there was an attempt to distinguish the cases. But in any event, we're controlled, our decisions are controlled by Bramadelli and not by the unpresidential case in de Gaussman. Well, on the contrary, Your Honor, the law has changed since then. But that wasn't the reason for the holding in de Gaussman. Even if it was, we wouldn't be bound by it. De Gaussman distinguished Bramadelli in terms of what the Attorney General knew and when the Attorney General knew it. Well, I would say, Your Honor, that the facts in this case are closer to de Gaussman, our liking, where there was a misrepresentation. In de Gaussman, he didn't talk about an earlier marriage. In this case, we have an involvement with the fraud. The removal proceedings were brought, and they were trying to say, well, look, you can't catch me in five years. So because you can't catch me in five years, you can't do anything, I'm home free. Catch me if you can't, that's the scenario. And this court correctly said, and the evidence was in that. How is that different from any other statute limitation in criminal cases? Catch me, I'm free. Well, I think the statute, the holding, and I'm reading the language, the statute does not extend the limitation period for removal proceedings. De Gaussman held that in this case, which can be instituted at any time, which is what happened here. I was asked earlier, I believe by judgment, is why five years is important. And a scenario where it could be important is, let's say somebody from court claims it's important because it's in the statute. Absolutely, Your Honor. But in real life, it has a way of protecting the veteran. And in real life, if the court doesn't follow its decision in De Gaussman. We can't follow our decision in De Gaussman. De Gaussman, by definition, is not binding on us. And the distinction that was made in De Gaussman, in this case, our case here, is much more like Muhammad Ali than it is De Gaussman because the attorney general here knew in 1988, based upon the following of the I-30, the J-130, that Ms. Landstory, was that her name, was not the Ms. Landstory, was not the alien's mother. On the contrary, Your Honor, they did not know in 1988. This was an evolving fraud. It started in 1985. When was the first I-130 petition denied after an investigation? It apparently was in 1985. They kept changing the names, Your Honor. The aunt kept changing the names. They kept submitting different documents. It just kept evolving over the years. They kept getting caught. But this time, they got a little further. You're saying they kept getting caught. So that means, doesn't it, that the attorney general knew? You're saying they kept getting caught. Well, they kept changing the information. Wait, did they keep getting caught? Well, in 1985, the State Department revealed that the mother was the aunt. And then they tried again in 1983. So in 1985, there were grounds to remove this alien, then, weren't there? Am I missing something? Weren't there grounds to remove Ms. Garcia in 1985? Whenever it was, they determined that Landstory was the aunt and not the mother? Well, I'm not sure if removal proceedings were brought up. No, they clearly weren't. But whether or not they were, there were grounds to bring them, though, weren't there? Oh, there could be grounds. But it doesn't change the facts in this case. No, it doesn't. Those are the facts in this case. And it seems to me those are the very same facts that we had in Bramadelli. And that was reason to Guzman distinguished Bramadelli. I'm not sure that the distinction is applicable. But let me back up a second. Do you see Judge Weiss's question? Judge Weiss is asking you where in this statute is there language that would remove this case from the holding in Bramadelli and that would go to the five-year statute of limitations? And I'm looking for it because of the amendment simply adds that last sentence, which seems to me to only go to the procedures that the attorney general must use to rescind a status prior to beginning procedures to remove. That's what it says. Which is an incredibly tortured way for Congress to change a statute of limitations. Well, it doesn't limit the five years. The five years limitation only comes in on the first part of the statute. No. It doesn't limit. It doesn't put the limit on removal, which has happened in this case. Which makes sense to have it because otherwise it would open a floodgate to all sorts of fraud. The fraud would just go on and go on. People would try and try. This would encourage people to try, try, try. And if you do it and it happens and then you can wait five years, you're in. No removal order is going to be brought. And that's not the purpose of the statute. This court has said that's not the purpose. But you're arguing they said it in De Guzman. We didn't say that in Bramadelli. And we were bound by Bramadelli. Well, no, Your Honor. I would say that. We're not bound by Bramadelli? I'm sorry. We're not bound by Bramadelli? Well, the law has changed since Bramadelli. Right. Judge Weiss is asking you how the change in the statute, starting with nothing in this subsection and ending with a syndialing status, how that new language changes the five-year statute of limitations. That's the question that he asked you. It would be our position that the five years, the limitation of five years no longer applies to removal. Because it only discusses this section. The five years only discusses this section. Does the statute say anything about the five years? I should say the amendments say anything about the five-year limitation. Well, it says that there should be, it doesn't mention a time limit on removal. So, not directly, Your Honor, but indirectly. And this Court has held that. This Court specifically distinguished between rescission and a distinguished decision between removal and a debasement decision. That was a lawful decision. Well, maybe we should use this as an opportunity to once again say to attorneys, when we say non-presidential, we really do mean non-presidential. Because it seems to me the distinction is being lost here. Well, Your Honor, that's a good point. However, this Court encourages, when cases are so on point, this Court, under Rule 31.1, I believe, federal rules encourages attorneys to cite to cases that are on the top. We encourage citation to unpublished opinions? Well, it accepts it in briefs, Your Honor. I can't cite to language that says encouragement. But in this case, Your Honor, the statute has changed 2.6. They changed the statute just because of the bombadilla case. Then why didn't it say that? I mean, if you're going to change the statute to reverse or repeal bombadilla, why, Congress certainly went about that in a very roundabout way. And I understand the Attorney General's position initially was, which is when I read it I was kind of surprised, that the text, as I understand it, before bombadilla, when arguing bombadilla, the Attorney General argued that Congress made a mistake in enacting or drafting the statute. And we shouldn't be bound by the language of the statute because it was a mistake. But now you're saying that Congress added this language to reverse bombadilla without referring to the five-year statute of limitations contained in subsection A. So maybe they made another mistake in the way they went about correcting their first mistake. Well, Your Honor, I would say that 246A was amended as this Court recognized in the gospel. And in bombadilla... What was the amendment was simply to add the last sentence? No, they removed... ...substituted removal for deportation in 96 and then added that last sentence. That's all it did. Public Law 104-208, Section 378A. That's all it did. In bombadilla, though, Your Honor, I don't have this... Well, in trying to get to the meaning of the last sentence and what changes that wrought, can you tell us anything about maybe the legislative history? What was the purpose of the last sentence? Well, it's not a position of the last sentence. The last sentence allowed... The last sentence didn't put a limit on removal proceedings, and the last sentence allowed someone to... who unwittingly adjusted. And the situation changed as a result. For example, in the example I was going to give where there's a student, she adjusted as an unmarried child of a lawful permanent resident, and then finds out later that the divorcing of the American Republic of Mexico is final. That adjustment is normal, valid. There's a recession. Well, she goes back to being a student, and she can adjust on another basis. And that's why that five-year period is there for a decision. But if you put removal in there, it encourages this type of fraud. It's just common sense. In cases like this where they kept changing names, the fraud kept evolving. That's true. You know, it started in 1980, but that wasn't the names they were using, and that wasn't the materials they were using. But they were caught, by your own terms. Whatever names they were using, you said yourself, the attorney general knew about it within the five years, which, again... I don't think so. They didn't know about this particular evolution. It's very tortured language. You know, they could have just said, the five-year period applicable to rescission proceedings do not apply to removal proceedings. Then we wouldn't have this problem. I'm trying to understand what it is that it means, or what Congress is trying to say. Well, I think that this Court in New Gosselin had it right. I think so, too, but... Your Honor, the Fourth Circuit in Massaica, this Court decided to also say that, on its own terms, Secretary Pruzzik said it was only the decision of the statute that was not the point to limit the attorney general's cause of deportation. Do you think the amendment is trying to address Bamadelli and the holding in that case? Well, in Bamadelli, this Court decided to do the same. It said they also prefer to keep locations predicated on something outside the adjustment. There would be no five-year bar. And I'm going to try to find the page in which it said that in Bamadelli. In Massaica, it kind of picked up our language. To the extent that we said, if we were to abide the attorney general's argument, we would basically be reading 1256A out of existence. Well, I guess that was the argument by the LA in Massaica, and that was rejected. But it wasn't because they're different. The decision is different from removal. And it's different for the example that I did. We don't have fraud. It's a misstatement. There's a rescission. Now, if you have somebody's status is rescinded, that person goes back. Absolutely not, Your Honor. It just means back to the status. You start over again. That's right. Okay. But with regard to removal, you go. You have to leave. You're gone. And you can't come back for 10 years unless it's voluntary. That's right. Yes. And definitely go with removal. But rescission, it protects the alien. If the mistake wasn't caught, not a mistake, not fraud or involving fraud as in this case, but a mistake was not caught in five years, while the alien has adjusted to life in the United States, they're not going to take it. What was the problem with five years here? Why did it take five years for the immigration service to realize that there was a fraud in this case? Well, they realized it in 04 and immediately applied for removal proceedings because she didn't have a valid immigration status. What happened in 04 that brought this case to the immigration service's attention? Well, she got her walkup to the residence desk. She tried to naturalize. When they were reviewing the naturalization. I see. Do you have to wait five years before you can be naturalized? I believe so. That's good. But again, the involving fraud is important. So when your honor said that in 85 they didn't, they caught her in 85. Well, it was apparently a different fact situation when she did apply. Well, they knew that Lansdor was the aunt and not the mother, I thought. At least in 88, they knew that Lansdor was the aunt and not the mother. But she kept changing her name. If you look at pages 227 through 228 of the record mark, you'll see the service laid out that she would use, the name would be a little bit different each time they would apply. So again, not putting the five-year limit, this sets up a whole piece of floodgates for people to try and try and try and try because the fraud evolved and they got it right. They slipped by. We got caught at this point. Five years, I'm home safe. That's not what Congress wanted. Okay, it sounds like Congress should address, if you're right, 1256A, Congress should address 1256A, it sounds like. But you want us to change the statute to deal with the situation in which you described. Well, no, Your Honor. Again, the Fourth Circuit and this court have already, although not in the published decision, the reasoning is there, and this is the correct reasoning, that the five-year limitation only applies to rescission and does not apply to removal. Do you know, do you not, that a, I'm pretty sure, I should say a non-precedential opinion is not circulated to the full court reports filed so that a panel decision such as de Guzla does not have the approbation or approval of the rest of the judges of the court? I did not know that it was not circulated, Your Honor, but again, it does resolve the issue correctly, and... No, no, wait, I've got another question for you. Can you give me an example of a situation where a finding of rescission would still allow the alien to remain in the country? Absolutely, Your Honor. I'll be happy to repeat that example I gave. Let's say somebody comes in as a student, as a student on a student visa, and she adjusts as an unmarried relative of a lawful permanent resident, and it's later found out, she unwittingly puts down that she is unmarried, that she actually has been divorced, and they find out the divorce proceedings were not right. So she was married when she applied as a non-married. So the rescission will happen.  which is a student on a student visa. That gives her an opportunity, Your Honor, to again apply for adjustment of status. Let's say she marries a U.S. citizen. She can again apply, or another way. So rescission, all it does is just takes what was given to you away. Whereas, and that's what happened in this case. The alien would go back to where she was, which is she didn't come with a valid visa, so she's removed, not because of this, but she's removed because she didn't have a valid visa. So... Thank you. I'm just asking a minute. You keep mentioning Assika, and it just occurred to me that even if we were to ignore de Guzman and focus on Assika, Assika, basically it's a Chevron case, and they defer to the Attorney General's reasoning, which is contrary to what we said in Bamadili, where we said that Chevron did not apply. Assika did not rely upon the amendment. They relied upon the Attorney General's interpretation and they deferred. It wasn't a situation where they... They mentioned our case in Bamadili, but they didn't hold, based upon contrary logic, except for the fact that they relied upon Chevron, which we rejected. Well, the Chevron... Well, that's already foreclosed. You've already said that this is not a Chevron case. We argue with Chevron deference any time the court reviews a board's interpretation of its own, of IMA. Well, that's what we said in Bamadili. This is an interpretation of the statute of limitations. That does not require any kind of expertise from the BIA or the Attorney General or anybody else. Courts can do that. We do that all the time. And all we're asked to do in 1256A is interpret the statute of limitations and determine to what extent it applies in a given case. That doesn't call for Chevron cases... Chevron discretion under deference under Bamadili. At the end, Your Honor, this court already has reasoned through and decided to resolve this issue. Under de Guzman. De Guzman, de Guzman. Okay. Judge Fuentes sided with de Guzman, so... We'll have to talk to Judge Fuentes about that. All right. Unless you have any more questions, we stand on our brief on 28J11. Do I get a rebuttal? Well, that's a good question. That's a very good question. I know, I know. It happens every now and then, not often. Play it by ear. Yeah, play it by ear, yeah. If you want to stand on your brief, I'm not suggesting that you do, but you get the tenor of our concern. And if you do that, then that also answers the question about rebuttal. I just want to make one point, and I just may regret it. It is that, just on the timing, I think there was some indication that the Congress' congressional action was based specifically on the middle age. From what I can tell from the... Is that how it's pronounced? The middle age? I believe so, I don't know. The middle age, it was issued on November 1st of 96, and I was signed by the President on September 30th. Oh, this is before the middle age. That's a good point, good point. Well, since you opened it up, you can tell me what the purpose of that last sentence is in the amendment to Section 246. ...initiate the rescission proceedings, and then... So it was procedural, it was a two-step... It was a procedural matter, and what Congress was doing, in my opinion, was saying you don't have to do that, you can do it in one time. And it wasn't addressed in the final... The BIA's decision in this case would disagree with that, wouldn't it? The BIA's decision says that that last sentence authorizes removal actions without any time restriction. That's correct, that's correct. This is a separate opinion. To what extent should we give that ruling, Chevron deference? Well, I would... I think that since the Court is bound by the middle age, I would use the language in that that it can independently write and provide some level of deference, given that it's evaluating a statute of limitations, that it has its own capability of executing an evaluation. Furthermore, I would say that this Court is bound by the analysis provided by the middle age as to the prior... the language that was already in effect. And I think that adding language in the context of the statute is the same reason that you can apply it in the middle age. Good. Thank you. Thank you, Your Honor. Thank you, Counsel, for your argument. We'll take a minute of your advisement. We have, I think...